UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD STOWE,

    Plaintiff,

v.

                                              Case No. 1:15-cv-91
                                              Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born in 1970. PageID.312. He completed one year of college and had previous employment as a tennis coach, retail sales person at a sporting goods store, department store, and cell phone company. PageID.318-319. Plaintiff alleged a disability onset date of December 2, 2008. PageID.312. He identified his disabling conditions as neuromuscular disease (slow channel syndrome), torn meniscus left knee, and migraine headaches. PageID.317. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 16, 2013. PageID.59-68. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. By way of background, in a previous decision entered on January 6, 2012, ALJ Prothro found that plaintiff was under a disability for the closed period of December 2, 2008 through June 1, 2010, and that the disability ended on June 2, 2010. PageID.116, 121-122. Based on this decision, plaintiff was found not disabled from June 2, 2010 through January 6, 2012. *Id.* Plaintiff filed the present application on October 1, 2012. PageID.314. At the first step, the ALJ noted that while plaintiff alleged a disability onset date of December 2, 2008, "the earliest possible onset date would be January 7, 2012, or the day after the date of the previous decision." PageID.59, 61. The ALJ also found that plaintiff engaged in substantial gainful activity from April 2013 through the date of the present decision, September 16, 2013. PageID.61. Given these parameters, the ALJ found that there has been a continuous 12-month period during which plaintiff did not engage in substantial gainful activity. PageID.62. The ALJ's opinion does not explicitly identify "the continuous 12-month period" when plaintiff was allegedly disabled. Based on the ALJ's findings, it appears that the relevant time period was from the onset date of January 7, 2012 through the date plaintiff commenced to engage in substantial activity in April 2013. The ALJ also found that plaintiff meets the insured status requirements of the Act through September 30, 2017. PageID.61.

At the second step, the ALJ found that plaintiff had severe impairments of myasthenia gravis and meniscal tear of the left knee with degenerative changes of the knee. PageID.62. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments

that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant may lift and carry up to 10 lbs. frequently; occasionally balance, stoop, kneel, crouch, climb ramps and stairs, but should never crawl or climb ladders, ropes or scaffolds; the claimant must avoid concentrated exposure to extreme cold.

PageID.62-63. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.66.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.66-67. Specifically, plaintiff could perform the following sedentary unskilled jobs in Michigan: non-retail clerk (12,000 jobs); and general office clerk (41,000 jobs).[1] PageID.67. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 7, 2012 (the adjusted disability onset date) through September 16, 2013 (the date of the decision). PageID.67-68.

### III. ANALYSIS

Plaintiff has raised one issue on appeal.

> **Substantial evidence does not support the ALJ's decision because the ALJ failed to give proper weight under 20 C.F.R. § 404.1527(d)(2) to the findings and opinions of plaintiff's two treating neurologists, Dr. Ybema and Dr. Harper, and plaintiff's treating orthopedist, Dr. Noffsinger.**

---

[1] The ALJ did not identify the state in which the jobs existed. However, the vocational expert defined the region as Michigan. PageID.99.

5

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2)

and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

As an initial matter, the ALJ's decision did not name Dr. Noffsinger. Plaintiff is apparently referring to a single treatment note from the doctor dated October 30, 2012, which is referred to in the ALJ's decision as Exhibit B4F, and described as an "essentially benign" physical examination. PageID.65, 410-411, 471. Plaintiff contests the characterization of Dr. Noffsinger's findings as benign, because the doctor noted that plaintiff has continued general weakness and generally atrophied appearing muscles and in all extremities. PageID.410-411. The record reflects that the visit was for general concerns related to a torn meniscus, and that the doctor did not provide any restrictions, stating: that plaintiff was "progressing as expected;" that plaintiff should engage in a gentle strengthening program; that plaintiff should get a new prescription for a new left knee brace "for a while longer" for providing patellar alignment assistance and general support; and, that plaintiff should report back on an as-needed basis. PageID.411. The ALJ's characterization of the physical examination as benign is supported by substantial evidence.

The ALJ's decision explicitly refers to opinions by Drs. Harper and Ybema as follows:

> Little weight was accorded the opinion of the claimant's former treating source, C.M. Harper, Jr., that the claimant met or equaled listing 11.12 ["myasthenia gravis"]. Dr. Harper treated the claimant during a period remote to this claim. Even aside from consideration of the reservation of the prerogative to determine whether a claimant "equals" a listing, Dr. Harper conceded he had not seen the claimant since 2010 (B7F/3), and his opinion is not consistent with the claimant's return to fulltime work (B8E/1), with the essentially benign physical examinations (B4F/2), (B9F/2, 3), or with the significant gaps in the claimant's treatment record.

\*   \*   \*

> Two opinions were received of the claimant's treating source, Kelly Ybema, M.D. One, dated December 13, 2012, indicated that the claimant could not work more than twenty hours per week, in no more than six-hour shifts and that he would be unable to squat, bend, or lift. The second, dated August 16, 2013, indicated that the claimant had met and equaled listing 11.12 since December 2008. Initially, it is of interest to note that Dr. Ybema has issued as many opinions as she has had meetings with the claimant (B5F), (B9F). Consideration aside of the reservation of the prerogative to determine whether the claimant equals a listing, it is noted Dr. Ybema, having initially met the claimant is 2012 (B5F), has very little basis to determine his level of function retrospectively, to 2008. Her opinion that the claimant meets a listing is not consistent with her own examination, which indicated normal muscle bulk and tone, normal sensation and coordination (B9F). Her opinion that the claimant could work no more than twenty hours per week is not consistent with claimant's return to full-time work some three plus months subsequent to the issuance of this opinion. Her opinions on the severity of the claimant's limitations are not consistent with her assessment of his condition as stable on medications (B6F/2), or with her issuance of a "return for consult" date of one year, indicative of a medical condition under good control (B9F/4). Accordingly, little weight was accorded these opinions.

PageID.65-66.

The thrust of plaintiff's claim is that the ALJ improperly evaluated the doctors' opinions based upon his return to work in April 2013. Plaintiff characterized this return to work as an unsuccessful work attempt (UWA), citing 20 C.F.R. § 404.1574(c), for "testing the employment waters" in a trial work period (TWP), citing 20 C.F.R. § 404.1592. Plaintiff makes the conclusory and speculative statements (1) that his employment was an UWA (i.e., "[i]f deemed an UWA, the Commissioner is precluded from holding the claimant's attempt to return to work against the claimant in denying the claim for benefits"), and (2) that his employment was under a TWP (i.e., "[o]nce an individual is found disabled, the Commissioner allows a disabled individual to test the employment waters for up to 9 months under a Trial Work Period (TWP) pursuant to 20 C.F.R § 404.1592 without a disruption of benefits."). PageID.469-470. Plaintiff then states that "the ALJ's finding that the Plaintiff's return to work within either the UWA window or the 9 month TWP

window as a basis in giving Dr. Harper and Dr. Ybema's opinion little weight is not based on substantial evidence because the ALJ's reasoning squarely runs afoul of the Commissioner's policy of encouraging disabled individuals to test the employment waters." PageID.470. These conclusory arguments, which do not explain how plaintiff's medical and procedural history establish that his employment was either, an UWA or TWP, provide no meaningful guidance to the Court. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones").

In this regard, the ALJ did not address plaintiff's employment as either an UWA or a TWP. Rather, the ALJ simply found that plaintiff returned to full-time employment with accommodations available to other employees:

> Reports entered into the record, as exhibit file (B8E/1) as supplemented by the testimony of the claimant during the hearing, indicates the claimant returned to full-time work at substantial gainful activity levels. The claimant reported several accommodations from his employer; however, he reported that these accommodations are available company-wide (hearing testimony).

PageID.62. The ALJ's finding was based in part, on plaintiff's counsel's advice that plaintiff returned to full-time work at State Farm Insurance on April 1, 2013. PageID.366. Based on this record, the ALJ gave good reasons for the weight assigned to the doctors' opinions. Accordingly, plaintiff's claim of error is denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated:  March 24, 2016			/s/ Ray Kent
					RAY KENT
					United States Magistrate Judge